Adient Licensing WI, LLC v. Adient Plc Then they said, well, the Brinson testimony, the expert, a wildcat, basically said, if you use the automobile seat as an example, you can take 52A and you can take 52A prime, or B, we'll call it, of 52B, 52B prime. And what the board ignored is the fact that Brinson ended her statement with, and the board quoted this and then ignored it, quote, as long as the predetermined sequence between the first and second locations is maintained. You still have to maintain those locations, even though you add things to it. And the gas patent teaches nothing about that. So then the board said, well, in column seven, there is a statement in which the predetermined sequence is discussed. The last sentence says, this may simply entail ensuring that the driver 30 is active only when in front of the correct one of the fastening locations, 52A to C, as indicated by the respective targets, 50A to C. And the board is basically saying that last sentence wipes out the whole concept of predetermined sequence. That's essentially what it is saying. The problem is that you've got to read that sentence in context. And the preceding two sentences talks about a predetermined sequence program requiring a predetermined sequence of fastening among the fastening locations 52A to C. According to this feature, the electronic condition, I can't read that, controls the sequence of fastening based on the largest target output and provides a sequence output indicating whether the predetermined sequence has been achieved. What that obviously has to mean, if there's a predetermined sequence of two things, each of which has to be in memory before you start, you can't have a user select the first sequence and then the memory select the second one. They both must be in memory. You have to read that last sentence. Meaning, because otherwise it doesn't make sense, that you know what the first sequence is and then you're looking for the control indicator to tell you what the second one is. Then it makes sense. Otherwise, it makes absolutely no sense. That basically is my argument. Unless there are questions, I'll reserve the rest of my time for rebuttal. Thank you. No, we'll save the rest of your time, Mr. Dunner. Let's hear from the other side. Mr. Lowery. Thank you, Your Honor. Matt Lowery, folio learner for the petitioner appellee. I guess I'd like to begin with the fastening location. Although the board found it met under both interpretations, it's sensible to figure out how it's met in the context of the interpretation. The board found that fastening location, the ordinary meaning is a place or a site of fastening, which is not just supported by dictionary, but common sense. If you have a board and you want to fasten it at the top and the bottom, it doesn't mean if you only use one nail, two nails, three nails. You fasten it at the top or the bottom. That's the plain meaning. And that was actually supported, as the board found, by the testimony of both experts, that particular construction. In response, Wildcat cites the specification, which provides an example with single openings. Examples aren't limiting, not in district court litigation, let alone broadest reasonable interpretation. And the prosecution history argument is probably even more strained. What happened there is there was a reference. I don't even think it was fastening. It was aligning holes with posts. And the examiner applied a rejection using individual openings, I suppose. And they argued that they didn't contest that. And therefore, there was some form of disclaimer. Quite the contrary. A disclaimer would be if you had ones with multiple openings and you said, our claims don't cover that. That would be a disclaimer. Here, we just have a rejection, not even a claim at issue. The inclusion of a dependent claim, it's not a disclaimer at all. And in fact, it would be like reading in a limitation from the prior art. The examiner said, here it is. I'm applying it this time with individual openings, not saying next time I won't use multiple openings. No comment on that. And then the applicant makes an amendment without any saying, oh, predetermined sequence means this. Fastening location means that. There's nothing like that in the record. So to call that a disclaimer so that it's only individual openings is to take an individual prior art reference and say, that example gets read into the claim. It's not done from the specification. It surely shouldn't be done. There's no hard and fast rule, is there? I mean, if it looks as if the examiner relied on this shift of emphasis, that needs to be considered, does it not? Unclear in the context of this case, but as a general matter, yes, Your Honor. One would look at the prosecution history, and the board did, and found a disclaimer in addition to the separate labor issues. And the reason they did that is because there was nothing that purported to define fastening location as an individual one. I mean, it wasn't even applied to that. It was a rejection of a broader and different claim. And so it's not like there was even a lengthy history and conversation about a single opening being the fastening location. And that's certainly not enough to be a clear disavowal in the context of a plain meaning of location site, as the board had found. In connection with the, and in terms of the, and this would be the end of it, there was something that's been said in the briefing, and I think repeated on oral argument here, was that the board read out the word predetermined. The board did not do that. The board said predetermined is in advance. So at A15 in the record, the board says, we see this argument that petitioner says, predetermined sequence is a sequence determined in advance, and we accept that. So there was no reading out of predetermined. It, too, was a application of the plain meaning of predetermined. And then the board found, notwithstanding the argument that was just made, that predetermined is met in gasp. They didn't say you can start at either one and go to the next. What they said was, I have a claim that says a first location and a second location, and you have to determine in advance where you start. But as long as you do that, it doesn't matter if you pick the second one or the first one. It's an unremarkable first and second is not an implied ordering. It could go either way. But they did find that you need to determine it in advance. And they looked at the record, and they looked at the testimony. They found that it's programmed in advance. They found in gasp that it's a correct sequence that has to be followed. And I would say that's more than just substantial evidence from which they could infer that gasp is predetermined sequence. You have to do it one site followed by the next. If this court were to conclude that fastening location means individual openings, the board went on and made findings on that. And they found two different ways that that construction would be met. The first finding of the board is that gasp discloses a predetermined sequence of individual openings. Because the board found that gasp discloses that you can have a process site or location that is just a single opening, which would necessarily meet the claim limitations. Because you go, the sites are predetermined. And if it's an individual opening, the individual openings are predetermined. This finding was not challenged in the opening brief by the appellants, which we point out in our responsive brief. And we say a reply brief is too late to raise a challenge to this fact finding. In the reply brief, they nevertheless do raise a challenge to that fact finding. But they do not address the issue that they hadn't addressed it before. And the reply brief is too late. And I would submit that this is typical fact finding. There are figures in GASP where there's a single circle. The board, you might say that circle is the site. Or you might say the circle is the site. And in that instance, a single opening. The board can make its finding. And the board did, that it's a single opening. The board went on to say that even if it's not a single opening, we would still find the limitation met. So this reasoning of the board is that let's suppose you have a site, the top of a board, where you've got two nails and a bottom where you've got two. You've got an opening here and an opening here. And the order of this one followed by this one is predetermined, even if you might do other fastening operations at the individual sites. Now, for that particular issues, the experts actually agree. You can have intervening bolting operations. The expert Brinson for Wildcat actually put it in her declaration. She said, if you, and Mr. Dunner just went through this. But he said, look, if you have A1, A2, A3, and B1, B2, B3, you could have the correct sequence if you went A1, A2, A3, B1, B2, B3. Or you could go A1, B1, A2, B2. And what that shows is that the intervening going to B1, rather than going straight from A1 to A2, says you can have these intervening bolting operations, which is something that the expert for the petitioner agreed with. And the board relied on that to make fact findings in this very specific technology context that the intervening operations won't avoid the use of the claim. And certainly not under a broadest reasonable interpretation when applying the testimony of the experts that was put before the board. And I believe that, unless the court has questions, I can yield my remaining time for the questions. Thank you, Mr. Lowery. Thank you, Your Honor. Mr. Dunner. Just a few points. One is, the argument was made that there's no disclaimer here. You'll note that I didn't talk about prosecution as a disclaimer. That's a hyper-technical point. The fact is, there was an original claim which was broad enough to cover a user-selected first choice. And then it was amended to put in a predetermined sequence  whether or not the board is bound. The fact is, it's relevant to the interpretation of a language. Secondly, you've heard the point that the board did not read out predetermined. It said it must be in advance. The board didn't say you need to do both in advance. The board didn't say the first one needs to be in memory and predetermined. The board didn't say anything like that. I suggest you read the board's opinion. And I don't think you'll find the point that was made. The point about the experts agreed you can have intervening bolting operations. Well, I made a point. I didn't hear any response to the point. Rinson explained the intervening bolting operations. You still have to have the sequence that is the predetermined sequence. That was her exact language. As long as the predetermined sequence between the first and second locations is maintained, I heard absolutely no response to that. The bottom line is the board did read out predetermined. If the limitation is only that the second follows the first, that doesn't dictate that the first is predetermined. It only dictates that the second is predetermined. And I can't think of any better way to describe the situation than to say they're reading that out. The last point is the plain meaning point about fastening location. You can't rely on plain meaning when you've got claim language which dictates an opposite result. You can't rely on claim meaning when you have to read claims in light of the specification. And the specification makes absolutely incontrovertibly clear that you're talking about multiple individual locations, each one, multiple locations, which are spaced apart. And the only ones that are spaced apart are individual locations. I think I've covered the points, unless there are questions. I submit. Anything from Mr. Dunn? Thank you. Thank you both. The case is taken under submission.